## CENTRAL INDIANA RY. CO. v. GRANTHAM.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1906.)

No. 1,171.

1. RAILROADS—FORECLOSURE OF MORTGAGES—LIABILITY OF PURCHASER FOR PRIOR LIENS UNDER DECREE.

Under a decree foreclosing two mortgages on railroad property, which required the purchaser at the sale to pay all claims filed within six months which should be adjudged "prior in lien to the mortgages foreclosed," where the proceeds of the sale paid the first mortgage debt in full, the purchaser is liable for the payment of a claim filed within the specified time which is adjudged prior in lien to the second mortgage; any equities existing in favor of the first mortgagee, which might be superior to such claim, being only by way of security for its debt and extinguished on its payment.

2. JUDGMENT—CONCLUSIVENESS OF PRIOR ADJUDICATIONS.

Where the ownership of the right of way, occupied by a railroad through a farm, had been repeatedly litigated in different suits between the successive owners of the farm and of the railroad, involving substantially the same issues, and each time finally determined in favor of the owner of the farm, the last being a proceeding by him to obtain the assessment of damages, to which the mortgagees of the railroad company were made parties, such determinations establish conclusively the right of the land owner to the compensation awarded him, and that the same is prior in lien to the mortgages, and such issues cannot be relitigated on the filing of his claim for allowance in a suit in a federal court for the foreclosure of the mortgages.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant, the Central Indiana Railway Company, is the purchaser under a decree of mortgage foreclosure against the Chicago & Southeastern

Railway Company, which requires the purchaser, among other conditions, to pay all claims filed within six months thereafter "which shall be adjudged prior in lien to the mortgages foreclosed"; and the appeal is from a decree in favor of the appellee, as intervening petitioner at the foot of such foreclosure decree, which confirms the master's report and orders that the appellee be paid. out of the funds in the registry of the court, the sum of $1,283.83, with interest and costs. Upon the intervening petition, as amended, and issues joined, the evidence was heard before a master and is reported by him, with findings of fact and conclusions thereupon. The record is voluminous, and the facts are complicated, but undisputed in all matters deemed material. The appellant's exceptions to the report were stricken from the files, for want of conformity with the rules, and the only exceptions, either preserved or pressed for consideration, relate to the conclusions of law.

The facts so reported are substantially these:

(1) Continuously from January 1, 1872, to April 24, 1877, Thomas H. Messick was owner in fee of S. W. ¼, section 4, and up to February 13, 1875, was like owner of N. W. ¼, section 9. all in town 17 N., range 3 W., Montgomery county, Ind. On February 13, 1875, Messick and wife conveyed to George G. Meyers the N. W. ¼ of section 9, excepting an enclosed lot occupied as a graveyard, and further excepting all the parcel of land lying on the north side of the line and including the right of way of the Anderson, Lebanon & St. Louis Railroad; the center of said road being the dividing line. Approximately nine-tenths of the strip of land described in the intervener's petition is included within said S. W. ¼ of section 4; and the title to the portion of the N. W. ¼ of section 9, contiguous to the part thereof conveyed to Meyers, was held by Messick until February 1, 1893, when it was conveyed to one Wesley Grantham. On April 24, 1877, the S. W. ¼ of section 4 was sold at marshal's sale to the Madison County National Bank, under an execution against Messick, and the marshal's deed thereupon was duly executed a year later, which conveyed to the bank said S. W. ¼ of section 4 with other real estate, and the deed was duly executed. On March 13, 1882, the bank conveyed to Elizabeth A. Messick the S. W. ¼ of section 4, and the grantee entered into possession thereunder.

(2) In 1873, while Messick owned such land, the Anderson, Lebanon & St. Louis Railway Company surveyed and located a railroad line diagonally across the same, including the strip described in the intervener's petition, and constructed the earthwork of a railroad grade, but did not at any time complete a roadway thereon. The grade work, however, clearly indicated the intended use and similar work extended in either direction beyond such land upon the line of the projected railroad, extending from Anderson to Waveland, Ind. No further work was done upon the line until January 1, 1887, a period of 14 years, and in the interval the several owners of the land along the line inclosed such grade and used the same for farming purposes, but enough of the grade work remained to indicate its purpose.

(3) In 1874 Thomas H. Messick inclosed the portion of grade on his land with fences, and the greater portion thereof was actually cultivated, and all was treated by said Messick and his successors in title as their own; such use continuing up to October 1, 1887.

(4) Thomas H. Messick was one of the officers of the railway company mentioned, either as director or vice president, during the time the grade was constructed over his land, and made no objections to such use, except that he stated that if ever completed he expected to receive compensation for the damages.

(5) On November 1, 1875, the railroad company referred to executed a mortgage upon all its railway property to Koontz and Crosby, trustees, to secure an issue of bonds, describing the property only in general terms as the right of way then owned or thereafter to be acquired by it and extending between the places named. When the mortgage was given, Messick held the title to his above-mentioned land and was in possession of the strip mentioned.

(6) In 1876 a creditor's bill was filed in the trial court against said railroad company, and a receiver was appointed December 28, 1877, of all the rail

road property, which then extended from Anderson to Lebanon, and the receiver went into possession and operated the same until turned over to the Midland Railway Company. On December 12, 1878, the trustees of the mortgage filed a bill for its foreclosure in the same court, wherein Messick was made a party defendant with others as claiming interests subordinate to the mortgage lien. A receiver was appointed, and the prior pending suit was dismissed. Messick did not appear in such suit, but was defaulted, and a decree of foreclosure was subsequently entered under which a sale was made to one Platt. The sale was confirmed May 21, 1885, and Platt conveyed the railroad property to the Midland Railway Company. Elizabeth A. Messick, the wife of Thomas H., was not made a party, nor was the Madison County National Bank, although it then had title to the property described in the intervening petition.

(7) On January 1, 1887, the Midland Railway Company made a mortgage to the Metropolitan Trust Company and one Davis, as trustees, to secure an issue of bonds; its property being described only in general terms as the right of way then owned and thereafter to be acquired by it. Such mortgage was recorded February 6, 1887. At the date of the mortgage Elizabeth A. Messick held the record title to the strip of land in question under conveyance to her from the bank, dated March 13, 1882, and was in the exclusive physical possession thereof as a part of the farm conveyed to her.

(8) In October, 1887, the Midland Railway Company entered upon the strip and commenced the construction of a railroad by grading, putting in culverts, and laying ties and rails; such work being done over the objection and protest of Mrs. Messick. Subsequently, the operation of the railroad over such strip was commenced and continued. On November 21, 1887, Elizabeth A. Messick commenced an action in the circuit court of Montgomery county to quiet the title to her land, under the following description: Commencing at a point on the west boundary line of section 9, town 17 N., range 3 W., 40 feet distant from the center of what is known and designated as the Midland Railway track, on a line crossing said center line at an angle of 90 degrees; thence in a northeasterly direction on a line parallel with such center line to the point where such line crosses the eastern boundary line of the S. W. ¼ of section 4; thence south on said eastern boundary of the quarter section to a point 40 feet distant from the center line of the railroad track, on a line crossing the center line at an angle of 90 degrees; thence in a southwesterly direction, parallel with the center line of said railroad track to the west boundary of section 9; thence north on said west boundary to the place of beginning. The strip so described includes the strip described in the intervening petition herein. The complaint in such action averred her ownership in fee of the strip, and that the Midland Railway Company claimed some title or interest therein adverse to her, averred that such claim was groundless and cast a cloud upon her title, and judgment quieting title was prayed thereupon. The Midland Railway Company appeared and answered, setting up claim of title through the prior company and the mortgage foreclosure. The venue of the action was changed to Putnam county, and it was tried May 16, 1892, resulting in a judgment against the Midland Railway Company that the claim of such company was groundless, and that Mrs. Messick was the owner in fee of the strip in controversy, and that her title thereto be forever quieted. Such judgment stands undisturbed, but the Metropolitan Trust Company was not made a party to the suit.

(9) On October 30, 1891, pending the action to quiet title, the Midland Railway Company conveyed all its railroad property to the Chicago & Southeastern Railway Company, an Indiana corporation, and the grantee immediately mortgaged the same to the Central Trust Company and one Collett, as trustees. This mortgage is the same on which the bill for foreclosure was filed and involved in the present decree.

(10) February 1, 1893, after the judgment quieting title in her, Mrs. Messick conveyed to Wesley Grantham, by a warranty deed in which her husband joined, the strip of land in question, together, with the two quarter sections of land across which the strip extended. On March 24, 1893, she further assigned to Wesley Grantham all her rights and claims against the suc-

cessive railway companies aforementioned, on account of the construction and operation of a railway through the real estate conveyed. On March 25, 1893, Wesley Grantham filed his complaint in the circuit court of Montgomery county against the Midland Railway Company and the ,Chicago & Southeastern Railway Company to recover possession of the strip of land in question, averring his ownership and right to the immediate possession, and that the railway companies wrongfully kept him out of possession, and praying judgment for recovery. The Chicago & Southeastern Railroad Company answered with substantially the same averments set up by the Midland Railway Company in the suit for quieting title. The venue of this suit was changed to the circuit court of Putnam county, and on December 10, 1894, judgment was entered therein in favor of Wesley Grantham that he was the owner in fee and entitled to recover possession of the strip mentioned, and such judgment stands undisturbed. Neither the Metropolitan Trust Company nor the Central Trust Company was made party to this suit, nor · was either of these trustee companies in possession or claiming possession of the strip, nor entitled to such possession under the terms of the mortgages respectively.

(11) On December 10, 1894, a writ of possession issued upon the last-mentioned judgment, and on January 24, 1896, the Central Trust Company filed in the trial court its bill for an injunction against the execution of the writ of possession, averring various facts on which. the railway companies had theretofore relied by way of defense to the actions referred to. On this bill a temporary restraining order was granted, but the bill was subsequently dismissed for want of jurisdiction. Pending appeal the restraining order was continued in force, but the dismissal was finally affirmed.

(12) On March 12, 1898, the Central Trust Company filed another bill in the trial court, averring substantially the same facts stated in the former bill, together with additional facts to establish jurisdiction. A temporary injunction was granted pending the hearing, but the bill was dismissed upon final hearing. On January 18, 1901, the Central Trust Company filed a further bill, setting up the purpose of the defendants, Wesley Grantham and James F. Grantham, to sever the connection of the railroad track at the point where it enters upon the strip of ground in question, in violation of the complainant's title to the property and in violation of the railway company's right to exercise its franchise, and praying that the complainant's title be quieted and protected and for injunctional relief. A restraining order was granted against interference by the defendants, demurrers to the bill were filed, and such cause is still pending and the injunctional order in force.

(13) On January 1, 1901, a writ of possession was issued in the ejectment suit before mentioned, which was duly served by the sheriff, and Wesley Grantham was put into possession of the strip in controversy.

(14) After obtaining possession under said writ, Wesley Grantham placed his fences across the strip and inclosed it with his other land, and exclusive possession thereof was maintained up to January 19, 1901.

(15) On October 2, 1896, Wesley Grantham conveyed by warranty deed to James F. Grantham, the intervener, all that portion of the strip lying on the south side of a line extending east and west through the S. W. ¼ of section 4 and 72 rods north of the south line of said S. W. ¼, together with all that portion of the farm abutting on either side of the strip. Said Wesley Grantham, however, retained ownership of that portion of the strip and farm lying on the north side of the line so described. Immediately after the sheriff had made execution of said writ of possession, Wesley Grantham delivered to James F. Grantham possession of the portion ·of the strip described in such conveyance.

(16) On January 18, 1901, the Central Trust Company ˙filed another bill in the trial court against Wesley and James F. Grantham and others for an injunction against interfering with the railway property, which was particularly directed against the execution of the writ of possession before mentioned, without, however, mentioning the fact of the judgment upon which such, writ was founded. It averred, in effect, that the defendants with armed force had unlawfully seized the strip and severed the track and were preventing the running of trains and carrying of mails. A restraining order

was granted upon this bill, which remains in force. Prior to the filing of such bill and on January 9, 1901, the Metropolitan Trust Company filed its complaint in the circuit court of Montgomery county, Ind., to enjoin Wesley Grantham from using force to maintain his possession of the strip of land. On January 14, 1901, Wesley Grantham filed a cross-complaint seeking to quiet title, and the action is still pending.

(17) On January 19, 1901, while the intervener was in possession of the portion of the strip described in his petition, the Chicago & Southeastern Railway Company entered upon such strip, replaced the portions of its track which had been removed under the writ of possession, and resumed operation of its railroad and has continuously operated the railroad over such strip, claiming the same as right of way.

(18) The deed from Wesley to James F. Grantham conveyed 94 acres, and Wesley retained the ownership of 88 acres. The 94 acres so conveyed to the intervener were damaged by the occupation for railway purposes to the amount of $1,410, without considering the effect of the judgment of the circuit court of Clinton county hereinafter mentioned.

(19 and 20) On July 26, 1901, the intervener, James F. Grantham, was the owner in fee and in possession of the tract of land through which the railroad right of way extended, as hereinafter referred to, and on that day filed his application in the circuit court of Montgomery county for a writ for the assessment of damages against the Chicago & Southeastern Railway Company on account of its taking and appropriating a portion of said land for railroad right of way; such application being made in conformity with the statutes of Indiana in that behalf. The application averred that the Central Trust Company of New York and the Metropolitan Trust Company and Theodore P. Davis, trustees, claimed some interests in the premises adverse to the complainant, and that their respective claims were unfounded and without right, and that they were made parties to the proceeding to answer as to their claims and interests in the premises.

(21) Upon such application a writ was issued by the clerk of the court to the sheriff, pursuant to statute, for the assessment of damages by a sheriff's jury.

(22) The sheriff gave written notice to the applicant and the Chicago & Southeastern Railway Company that the damages would be assessed by a jury upon the premises on September 24, 1904. At the same time the applicant filed with the clerk and sheriff an affidavit, averring that the Central Trust Company and the Metropolitan Trust Company were nonresidents of the state and had no agent or attorney therein upon whom process could be served, and the sheriff and clerk caused notice of the pendency of the proceedings and of the time and place of assessment to be published pursuant to statute.

(23) The sheriff impaneled a jury in conformity with the statute, and such jury assessed damages in favor of the applicant, and the sheriff filed with the clerk of the court his return, setting forth the proceedings upon said writ.

(24) Upon such return, the Chicago & Southeastern Railway Company, the Central Trust Company, and the Metropolitan Trust Company filed with the clerk their several exceptions to the award by the sheriff's jury, and thereupon, on March 8, 1902, the venue was changed to the circuit court of Clinton county, on motion of the railway company.

(25) Upon such removal the railway company filed additional pleadings, setting up its claim to the land in controversy, and issues were formed upon the application, exceptions, and pleadings, and on July 2, 1902, the issues were tried before the court and a jury, resulting in a verdict against all of the defendants upon such issues and assessing damages against the railway company at $1,070 with costs. Judgment was entered, accordingly, for recovery of such amount against the railway company, and such judgment remains in force. The master finds the amount of such judgment $1,283.83, to be the amount of damages resulting to the intervener, instead of the amount stated in the eighteenth finding. The railway company appealed from such judgment, and the appeal was pending when the findings were filed.

(26) On November 28, 1902, the Central Trust Company filed a bill of com-

plaint in the trial court against the Chicago & Southeastern Railway Company for the foreclosure of the mortgage executed by that company October 30, 1891, and the Metropolitan Trust Company entered its appearance and filed a cross-bill, praying foreclosure of the mortgage executed to it and Davis, as trustees, January 1, 1887.

(27) The decree of foreclosure was entered under such bill and cross-bill, December 22, 1902, and sale of the railway property was thereby directed to satisfy the debt due upon the foot of the mortgage to the Central Trust Company and the mortgage to the Metropolitan Trust Company, so far as the same would go, and pay off such other claims and liens against the Chicago & Southeastern Railway Company as should be decreed by the court to be prior in equity to the lien of the mortgages, and six months' time was given for the filing of claims against the company.

(28) The railway property was sold pursuant to the decree, and the purchaser assigned his purchase to the Central Indiana Railway Company. Both sale and assignment were reported to and approved by the court. and proper instruments of conveyance and assignment were executed by an officer of the court to the Central Indiana Railway Company.

(29) The Central Indiana Railroad Company is a corporation, duly organized for the purpose, and entered into possession of the property described, including the strip mentioned in the intervening petition, deriving such possession from the receiver of the court, pursuant to the decree and sale. Such receiver entered into possession on his appointment, and his possession and use was continuous up to the time of such delivery to the purchaser.

(30) From the records in the foreclosure action, it appears that the full amount of the principal and interest secured by the mortgage to the Metropolitan Company and Davis, as trustees, has been paid out of the proceeds of the sale, and that the amount realized is insufficient to pay in full the principal and interest of the debt secured by the Central Trust Company mortgage.

(31) The intervener, prior to October 2, 1896, the date of the conveyance to him from Wesley Grantham, had knowledge that railroad tracks were located on the strip of land constituting a part of the 94 acres so conveyed to him, and had such knowledge when he accepted the deed. After the intervener commenced the proceedings for assessment of damages, and during the pendency thereof, the intervener entered into a verbal agreement with his grantor to accept an amount to reimburse him for the portion of land occupied by the railway company. On September 24, 1901, this amount was fixed between them at $300, and a note was accepted for that amount, but the intervener agreed to continue the proceedings for the assessment of damages, provided his grantor would pay the expenses, and have the benefits of any recovery. On October 10, 1901, Wesley Grantham appeared in the Montgomery circuit court and filed a disclaimer of all interests in such proceedings. Subsequently, and after the rendition of judgment therein, Wesley Grantham died intestate, leaving the intervener as one of his heirs at law. The judgment referred to was never assigned by the intervener to his grantor, nor to the administrator of the estate, but stands of record in the name of the intervener.

The master's conclusions of law are, in substance, that the claim of the intervener, amounting to $1,283.83, is held by him for the use of the estate of Wesley Grantham, deceased, and is prosecuted by him in the interest of such estate, subject to the right of the intervener to reimburse himself for all costs and expenses paid and incurred in such prosecution; that the claim is a valid claim; and that in law and in equity it is entitled to be paid in full out of the money in the registry of the court arising from the foreclosure sale. A decree, accordingly, is recommended.

Henry Crawford, for appellant.

F. E. Ballard, for appellee.

Before GROSSCUP, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). The appellant, as the purchaser of the railroad property under the foreclosure decree, assumed liability for all claims and liens which were subsequently adjudged to be entitled to priority, under applications filed within six months after the entry. Two mortgages were involved in that decree—one made by a predecessor corporation to Metropolitan Trust Company and another, as trustees, January 1, 1887, securing bonds to the amount of $375,000, and the other made by the Chicago & Southeastern Railway Company to Central Trust Company and another, as trustees, October 30, 1891, securing bonds to the amount of $1,425,000. The bill for foreclosure was filed in the trial court by the Central Trust Company, representing the second mortgage, and a receiver was appointed over the property. Subsequently the trustees of the first mortgage intervened and filed a cross-bill to foreclose such mortgage. The decree provided accordingly for payment of the first mortgage out of the proceeds of sale and for application of the remaining purchase money upon the second mortgage, but subjected the proceeds to prior payment of all claims adjudicated at the foot of the decree to be entitled to priority. The proceeds largely exceeded the first mortgage, so that was paid in full, leaving the residue to be awarded as the decree directs. Thus no right or interest arises except such as exists in the second mortgagee—the appellant, under the final provisions of the decree referred to, standing merely as the representative of such interest in the disposition of proceeds—and any equities in favor of the prior mortgagee extend only by way of security for its bonds, and, upon their payment, do not accrue to the second mortgagee, as against intervening claims and equities. Therefore, the only question for review is whether the appellees's claim was rightly awarded priority over the second mortgage. Rights vested in the Chicago & Southeastern Railway Company, mortgagor, through its purchase of the property or otherwise, are of course involved in the inquiry, but not any independent equities which may have arisen to save the prior mortgage from impairment. The view thus stated, which we believe to be unquestionable, is studiously ignored in the argument for reversal, and, in so far as the various contentions rest on assertions of equity for the benefit of the first mortgagee, no further discussion is deemed necessary.

The complicated facts in evidence, relating to the chain of conveyances under which the appellee deraigns title, possessions of the right of way strip, and the relations and acts of predecessors in title, are the main reliance for defeating the claim. These facts, reported by the master, are well arrayed in the argument of counsel for the appellant and pressed for consideration, and are not without force to the end sought, unless the subsequent adjudications touching the subject-matter of this controversy are binding upon these parties and decisive. If the adjudications referred to are thus operative, the pre-existing facts are not reviewable, either as tending to create an estoppel against a claim for compensation, or indicating an accord and satisfaction, or defect in title to a portion of the strip in question. In passing to the consideration of the litigated matters, however.

143 F.—4

these leading and undisputed circumstances may well be noted: The original entry upon the strip in question, for right of way purposes, was by a predecessor railway corporation (referred to in argument as the Anderson Company) in 1873, when one Messick, one of the officers of the company, owned the farm and acquiesced in the entry, without condemnation or payment. Such entry consisted of location and light grade work. In 1874, with no further use made of the entry, Messick re-entered upon and inclosed the right of way strip within his farm, and thereafter for about 13 years the strip was in his exclusive possession, under cultivation as a part of the farm. In 1875 the Anderson Company mortgaged its property under general terms, and the mortgage was subsequently foreclosed and the property sold to the Midland Railway Company in 1885; and this company made re-entry upon the strip in 1887, and proceeded with the construction of a railroad, which was, on completion, continuously operated as a line of railroad, by it and its various successors in interest or occupation. On October 30, 1891, the Midland Company transferred its property to the Chicago & Southeastern Railway Company, and the mortgage in question to the Central Trust Company and Collett, as trustees, was executed by the purchasing company on the same day. The several adjudications involved in this review arose out of litigation which ensued immediately upon the above-mentioned reoccupation of the right of way strip by the Midland Company, in 1887.

1. On November 21, 1887, Elizabeth A. Messick, as the alleged owner in possession of the farm, brought an action against that company, in the circuit court for Montgomery county, to quiet title to the strip, under the provisions of section 1070, Rev. St. 1881 of Indiana (1 Burns' Ann. St. 1894, § 1082). The Midland Company answered (1) in a general denial, and (2) averring ownership through the Anderson Company, under facts stated. On change of venue to Putnam county the issues were tried May 16, 1892, and resulted in a judgment in favor of the plaintiff, that the "claim of said Railway Co. was groundless," and the plaintiff "was the owner in fee of said strip of land," and "that her title thereto be forever quieted." The appellee's title is derived from the plaintiff in that judgment, and the transfer from the Midland Company to the Chicago & Southeastern Railway Company, and its mortgage to the Central Trust Company and Collett, as above mentioned, were made pending such suit, October 30, 1891. The conclusive effect of such judgment, as between the parties, is settled by the recent opinion of the Supreme Court of Indiana, in the case (referred to later on another point) involving the same claims of title, reported as Chicago & Southeastern Railway v. Charles W. Grantham, Administrator, etc., 75 N. E. 265. As there stated:

"The decree quieting the title to said land therefore adjudged that the whole interest was absolutely in Elizabeth A. Messick, and that the claim of the Midland Railway Company was groundless. Such a decree cuts off every claim, whatever its form or character, or any easement or other interest in the land."

And the Indiana cases supporting such view are cited. Without reference to the force of this ruling upon the present controversy, we adopt its interpretation of the issues thus set at rest, as both just and applicable to this adjudication.

2. After obtaining such judgment, Mrs. Messick conveyed to Wesley Grantham the land which includes the right of way strip referred to, and such grantee, in March, 1893, sued the Chicago & Southeastern Railway, in the circuit court for Montgomery county, to recover possession of the strip. The company answered, setting up substantially the same defenses interposed by the Midland company in the first mentioned action; and, upon change of venue to Putnam county, in December, 1894, the plaintiff obtained judgment of ownership and for recovery of possession of the right of way strip. A writ of possession was issued and executed by the sheriff, so that Wesley Grantham (appellee's grantor) obtained physical possession of the strip, for a period of several days. Thus the railway use was severed for the time, but soon resumed under injunction proceedings. All issues touching the title were plainly settled against the purchasing corporation by this adjudication, if not concluded by the earlier decree, and the judgment is not open to collateral attack (as sought in the present contest) under the authorities, state or general. Unreversed and unappealed from, it concludes the parties and privies—that the title was in the appellee's grantor and the railway company was a trespasser—and the question is not reviewable here whether either judgment or dispossession thereunder were rightful.

3. The remaining inquiry, therefore, is the nature and effect of the proceedings instituted by the appellee, July 26, 1901, for an assessment of damages against the Chicago & Southeastern Railway Company, for taking and appropriating the right of way strip in question; Wesley Grantham having conveyed to the appellee the portion of land which embraced such strip, with delivery of possession of the right of way strip during the interim of the grantor's exclusive possession under the ejectment writ. Formal compliance with the statutory provisions (1 Burns' Ann. St. Ind. 1894, Art. 30), in the application and proceedings, is unquestioned. The Central Trust Company was included as a party defendant, with the railway company and the prior mortgagee, to answer any interests or adverse claims, and issues were made up and tried in conformity with the statute (1 Burns' Ann. St. Ind. 1894, Art. 30, §§ 896, 908) upon pleadings on the part of the railway company setting up its claims to the right of way strip and various objections to the proceedings. The verdict was against all of the defendants upon the issues, with the damages assessed against the railway company. That any issue affecting the title to the strip—right to, as well as liability for, the damage—was properly adjudicated in that proceeding, not only impresses us to be the statutory purpose, but is established by the recent opinion of the Supreme Court infra, upon appeal from like proceedings and judgment.

With the occupancy of the right of way strip by the railway company thus adjudicated as wrongful, and the right to recover damages

established in the appellee at the amount assessed, we are of opinion that the answers to his intervening petition for its allowance out of the fund in court raised no issuable matter, and the decree justly awards such payment. The Central Trust Company is equally subjected to the adjudications, and neither it nor the appellant is entitled to reopen any of the issues so settled. An objection is raised against the appellee's right to recover, under the finding of an agreement with his grantor respecting these damages, which is assumed to create a beneficial ownership in the grantor and leave the petitioner no substantial interest. This objection, if tenable in this forum in any view of the facts, is within force under the last-mentioned adjudication.

The report of the master, in reference to the adjudication of the Clinton county circuit court on the assessment of damages (No. 25), states that an appeal therefrom was taken to the Appellate Court and is pending. Since the hearing below an opinion has been handed down in the Supreme Court of Indiana, on transfer from the Appellate Court, in the above-mentioned cognate case of Chicago Southeastern Railway Co. et al. v. Charles W. Grantham, Administrator, etc., 75 N. E. 265, which affirms the judgment of the Clinton circuit court on appeal in that case. While the decision is not in the case involved in this review, nor could it be treated as within the present record were it identical, nevertheless, the published opinion is well entitled to the highest consideration, here as elsewhere, as an expression of the law of that forum upon facts substantially identical. For interpretation of the statute in question and the proceedings thereunder, including applicability to the same state of facts, that opinion is both satisfactory and controlling. The rule which it upholds in reference to these prior adjudications confirms the view expressed in the foregoing opinion, while both conclusions are well fortified by the doctrine stated in Southern Pacific R. R. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355, and authorities cited and reviewed.

The decree of the Circuit Court accords with such conclusions, and it is affirmed.